UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DERRICK SMITH,

                Petitioner,

v.

DANIEL F. MARTUSCELLO,

                Respondent.

9:15-CV-0059
(TJM)

---

APPEARANCES:

DERRICK SMITH
12-A-1948
Petitioner, pro se
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051

HON. ERIC T. SCHNEIDERMAN      PRISCILLA I. STEWARD, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

THOMAS J. MCAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.     INTRODUCTION

Petitioner Derrick Smith filed a petition for a writ of habeas corpus and exhibits pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Am. Pet."); Dkt. No. 1-1, Exhibits.[1] He raises the following grounds for habeas relief: the trial court relied upon unreliable and inaccurate information regarding petitioner's post-guilty plea conduct to impose an

---

[1] Petitioner's Exhibits are copies of the Appellate Division's July 10, 2014 Memorandum and Order affirming his conviction, and the New York Court of Appeals's December 9, 2014 Order Denying Leave.

"enhanced" sentence, and his waiver of appeal should not bar review of this claim (Grounds One and Two); he was denied the terms of his plea bargain (Ground Three); the prosecutor coerced his plea by promising not to prosecute petitioner's girlfriend in exchange for the plea (Ground Four) and trial counsel was ineffective because he communicated the prosecutor's promise (Ground Five). Pet. at 5-7.[2] Respondent opposes the petition. Dkt. No. 6, Answer in Opposition to the Petition for a Writ of Habeas Corpus; Dkt. No. 6-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. No. 7, State Court Records ("SR").

For the reasons that follow, the petition is denied and dismissed.

## II. RELEVANT BACKGROUND

In 2010, a Schenectady County grand jury returned an indictment charging petitioner with second degree murder (N.Y. Penal Law §125.25(1)) and two counts of second degree criminal possession of a weapon (N.Y. Penal Law §§265.03(1)(b) and 265.03(3)). Dkt. No. 7-1 at SR 9-10, Indictment. The charges stemmed from petitioner's arrest for using a .22 caliber handgun to shoot and kill Michael Deveaux on June 27, 2010, in the city of Schenectady, New York.

On September 14, 2011, during petitioner's jury trial, the parties reached a plea agreement. Under its terms, petitioner agreed to plead guilty to first degree manslaughter in exchange for the court's promise that he would be sentenced to a determinate term ranging from 15 to 20 years in prison, followed by 5 years post-release supervision. Dkt. No. 7-2 at SR 178, Plea Transcript. Petitioner also agreed to waive his right to appeal. *Id.* at SR 179.

---

[2] The cited page numbers for the petition refer to those generated by the Court's electronic filing system.

The court confirmed that petitioner was not taking any "medications at the jail." Dkt. No. 7-2 at SR 178. It explained that the prosecutor would "not advocate for the maximum of the 20 years if there's no problems between this defendant and anyone else between now and the sentence." *Id.* at SR 179. The court clarified that if "there's no other issues between now and the sentencing as far as any accusations of tampering with witnesses" or "interfering in any other cases," it would "consider that a big factor in getting [petitioner] down towards the minimum end of the range." *Id.* at SR 179-80. The court further explained that it was not set on imposing any particular sentence within the 15 to 20 year range, and would "listen to both sides[.]" *Id.* at SR 183-84. The court assured petitioner it was "not trying to trap" him, reiterated that it did not have a sentence in mind, and explained that it "wanted the 20 [years]" included in the possible sentencing range "in case there's a problem between now and sentence." *Id.* at SR 184.

Petitioner told the court he was concerned about pleading guilty and facing the 20 year sentence because he was not "asking his family what they feel" and was "making a decision right now." Dkt. No. 7-2 at SR 184-85. The court assured petitioner it was taking the plea with "a open mind" and was "willing to get down to the minimum end of the range" if there was no evidence petitioner interfered with other prosecutions related to the murder. *Id.* at SR 185. Petitioner told the court he understood. *Id.* at SR 186.

The prosecutor then told the court that as part of the plea, he would not file any witness tampering charges against petitioner or his girlfriend, Darlene Canteen, based on events that allegedly occurred prior to the plea. Dkt. No. 7-2 at SR 186.

Petitioner conferred with counsel. Dkt. No. 7-2 at SR 186-87. He then confirmed he

3

understood that by pleading guilty, the jury trial would end and he would not "know what a jury would have done[.]" *Id.* at SR 187. He understood he would not have the opportunity to testify on his own behalf, and was giving up the right to have counsel cross-examine witnesses against him. *Id.* at SR 187-88. Petitioner also understood he was giving up the right to present affirmative defenses. *Id.* He understood the court's promise that it would consider the probation report, letters submitted by petitioner's family and friends, and statements by both attorneys on the day of sentencing, that the court had not decided on a sentence yet, and that the court was "not looking at 20" years, but was "looking more towards 15" years. *Id.* at SR 188-89. Petitioner also understood that by "pleading guilty, the DA will not ... prosecute [him] or [his] girlfriend or attempt to prosecute [him] on the alleged tampering" of a witness. *Id.* at SR 189. He assured the court he was not threatened or forced into plead guilty, and agreed that pleading guilty was "a better option than risking getting a life sentence" if the jury convicted him of murder as charged in the indictment. *Id.* at SR 190.

The court then explained that as part of the agreement, petitioner was waiving his right to appeal, and would be "stuck" with the sentence so long as it was within the 15 to 20 year range. Dkt. No. 7-2 at SR 189-90. Petitioner told the court he understood, and that no one threatened or forced him to sign the appeal waiver, and that no one promised him anything in exchange for the appeal waiver. *Id.* at SR 191. Counsel and petitioner discussed the written waiver of appeal, and petitioner signed it. *Id.* at SR 192, SR 200, Written Waiver of Right to Appeal.

Petitioner admitted that on or about June 27, 2010, in the city of Schenectady, he intended to cause serious physical injury to Michael Deveaux, and caused his death. Dkt.

4

No. 7-2 at SR 193. The court confirmed no one threatened petitioner into pleading guilty, petitioner understood "all the legal words" the court used, and petitioner had no questions for the court. *Id.* Petitioner also confirmed he understood the meaning of the appeal waiver. When the court asked him to explain the waiver in his own words, petitioner responded that the waiver meant he was "unable to appeal any decision that the court did legally." *Id.* at SR. 193-94. The court told petitioner to stay out of any altercations in the jail, because if he was "arrested on something new, it's going to jam" him up. *Id.* at SR 194. Petitioner told the court he understood. *Id.*

The court accepted petitioner's plea to the reduced charge of first degree manslaughter, finding that it was "freely, voluntarily and intelligently made with the advice and consent of competent counsel." Dkt. No. 7-2 at SR 195. The court then warned petitioner not to engage in behavior "that's going to get [him] in trouble," including "tricks on the phone," and if the prosecutor could "show [the court] something, that'll count against [him][.]" *Id.* at SR 197-98. Petitioner replied, "Yes, sir." *Id.* at SR 198.

While awaiting sentencing, petitioner "was indicted on various counts of conspiracy alleging that he had conspired to murder certain witnesses who testified at his trial and to intimidate a witness in another criminal action." *Smith*, 119 A.D.3d at 1090. On April 23, 2012, petitioner appeared with counsel for sentencing. Dkt. No. 7-2 at SR 201, Sentencing Transcript. The prosecutor requested a hearing pursuant to *People v. Outley*, 80 N.Y.2d 702 (1993)[3] to determine whether petitioner's sentence should be enhanced. *Id.* at SR 202.

---

[3] In *Outley*, the New York Court of Appeals held "proof that [a] defendant actually committed the postplea offense which led to the arrest was not necessary" before a sentencing court could impose an enhanced sentenced based upon a defendant's breach of a "no arrest" plea condition. *Outley*, 80 N.Y.2d at 713. The court ruled that to satisfy due process before imposing an enhanced sentence, a sentencing court "must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation," and

5

The prosecutor stated that at the time of his plea, the court warned petitioner not to get into trouble or be "arrested on something new[.]" Dkt. No. 7-2 at SR 203. He argued the court's warning was "a direct indication" to petitioner "that one of the conditions set by this Court is that he not be rearrested on any new charges or for anything, new crimes between the time before he was sentenced." Dkt. No. 7-2 at SR 203. The prosecutor explained that the new charges were based on petitioner's involvement in a "criminal conspiracy to commit murder involving three different individuals, as well as conspiracy to intimidate a witness[.]" *Id.* at SR 204. The three individuals were "witnesses and/or potential witnesses" in the murder trial of Wade McCommons conducted in Schenectady County Court during October 2011. *Id.* at SR 204, 214. Petitioner was charged with setting in motion a "chain of events that there would be retribution and retaliation for these witnesses for coming in and telling the truth in the McCommons trial." *Id.* at SR 214. The prosecutor stressed that the charges were different from those that resulted in the plea condition that petitioner not tamper with any witnesses. *Id.* The plea condition was designed to stop petitioner from attempting to "dissuade" two witnesses "from cooperating in the McCommons trial." *Id.* at SR 214. The new charges involved petitioner's role in setting those witnesses up to be killed. *Id.*

The court took "judicial notice" of the new indictment. Dkt. No. 7-2 at SR 205. The prosecutor then attempted to introduce evidence that petitioner: exchanged letters with others involved in the new conspiracy in which they identified "which witnesses to target" and "why they should be targeted;" mailed materials related to the targeted witnesses to people in the city of Schenectady; and instructed others to post a confidential informant agreement

---

the inquiry must "be of sufficient depth ... so that the court can be satisfied-not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." *Id.* at 713.

6

related to one of the targeted witnesses "on at least one storefront in the city of Schenectady[.]" *Id.* at SR 208-209. The court declined to admit the letters into evidence, or to rely on them when imposing sentence, stating that the new indictment "speaks for itself." *Id.* at SR 210.

After hearing further arguments from the prosecutor and defense counsel, the court declined to impose an enhanced sentence outside the range discussed at the time of petitioner's plea. The court explained that petitioner was not advised during the plea of the circumstances upon which he could withdraw his plea, and if the court sentenced him above the negotiated 15- to 20-year range, that would give him "an opportunity to appeal and give him an opportunity to withdraw his plea." Dkt. No. 7-2 at SR 213-19. The court did not want petitioner to withdraw his plea, stating that a sentencing range was on the record, withdrawing the plea would place the parties at "square one," causing further delay, and there was "no guarantee as to what the result" of a trial would be. *Id.* at SR 217. The court ruled, instead, that it would consider the prosecutor's arguments "in weighing whether to go to the 20 [year sentence] or to go towards the 15 [year sentence] and move on that way." *Id.* at SR 217. The prosecutor told the court that if petitioner agreed to a 25-year sentence, that sentence would satisfy the newly indicted conspiracy charges. *Id.* at SR 218-19. Petitioner rejected that offer. *Id.* at SR 219.

The court then listened to the victim's mother and aunt, and the prosecutor asked the court to impose a 20-year sentence and an "appropriate period of post-release supervision." Dkt. No. 7-2 at SR 220-26. Petitioner told the court he remembered his prior 2005 and 2004 felony convictions, and that he was not on parole. Dkt. No. 7-2 at SR 227. Petitioner

7

declined to make a statement, but his counsel asked the court to impose a sentence "within the range of the established plea bargain." *Id.* at SR 228. The court told petitioner it was "going to go to the high end of the sentence of 20 years" because he was "re-indicted and because after reviewing the record" the court believed he "deserve[d] the maximum end of the plea range." *Id.* at SR 229, 230. The court then imposed a determinate term of 20 years in prison, followed by 5 years postrelease supervision. *Id.* at SR 230; Dkt. No. 7-2 at SR 236, Uniform Sentence and Commitment. The court also ordered petitioner to pay $1,129 to the victim's family for funeral expenses, and a $50 DNA fee. Dkt. No. 7-2 at SR 232-34.

Petitioner appealed, arguing that the sentence was based on unreliable and inaccurate accounts of his post-plea conduct, and that his waiver of appeal and failure to preserve the claim should not prohibit relief. Dkt. No. 7-1 at SR 119-237, Appellant's Brief and Appendix. Petitioner also filed a pro se supplemental brief in which he argued: he was denied the terms of his plea agreement; the prosecutor coerced his plea and committed misconduct by promising not to prosecute petitioner's girlfriend if petitioner accepted the plea agreement; and trial counsel was ineffective because he communicated the prosecutor's promise not to prosecute petitioner's girlfriend if petitioner pled guilty. Dkt. No. 7-2 at SR 237-52, Appellant's Pro Se Supplemental Brief. The People opposed the appeal. *Id.* at SR 253-328, Respondent's Brief & Appendix. On July 10, 2014, the Appellate Division affirmed. *Smith,* 119 A.D.3d at 1088, 1088-90. The New York Court of Appeals denied leave to appeal on December 9, 2014. *Smith,* 24 N.Y.3d 1089 (2014).

This action followed.

## III. DISCUSSION

### A. Grounds One and Two

Petitioner argues in Ground One of his petition, as he did on direct appeal, that the sentencing court relied on inaccurate information about his post-plea conduct in order to sentence him to 20 years in prison. Pet. at 5. In Ground Two, petitioner claims that his waiver of appeal should not bar his sentencing misinformation claim because, by relying on inaccurate information to sentence petitioner, the trial court broke the terms of the plea agreement. *Id.* at 5-6.

The Appellate Division rejected these arguments, ruling that "[i]nasmuch as this claim amounts to a challenge to the procedures utilized in determining his sentence and does not implicate the legality of the sentence or the power of the court to impose it, [petitioner's] valid waiver of the right to appeal precludes our review of such claim." *Smith*, 119 A.D.3d at 1089. The Appellate Division further stated that, "Were we to consider the issue, we would find that the hearing conducted was sufficient to enable County Court to assure itself '"that the information upon which it base[d] the sentence [was] reliable and accurate."' *Id.* (quoting *People v Naranjo*, 89 N.Y.2d 1047, 1049 (1997), quoting *Outley*, 80 N.Y.2d at 712). For the reasons that follow, the Court finds that Ground One is procedurally defaulted based upon the Appellate Division's reliance on an adequate and independent state ground to deny it, and Ground Two is without merit.

Substantive review of a habeas claim is prohibited if the state court rested its decision on "'a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin,* 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler,* 558

U.S. at __, 130 S. Ct. 612, 615 (2009) quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). To qualify as an "adequate" ground, the state rule must be "firmly established and regularly followed." *Id.* at 316 (quotation marks and citation omitted); *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (explaining that habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct."). A rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Kindler*, 558 U.S. at 61.

Finally, even if the state court considers the merits of an otherwise precluded claim, its reliance on a procedural ground as one basis for the denial of the claim precludes federal habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternate* holding" because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original); *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) (state court's discussion of ineffective assistance claim, introduced by noting that "*if this court were to consider* the defendant's claim of ineffective assistance of counsel, the motion *would* similarly be denied" signaled that the court "was *not* basing its judgment on the merits of the federal claim, but rather on a state procedural bar.") (emphasis in original).

In "exceptional cases," the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534

10

U.S. 362, 376 (2002); *see Garvey v. Duncan*, 485 F.3d 709, 713-714 (2d Cir. 2006); *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003).[4] But here, the Appellate Division's denial of petitioner's sentencing misinformation claim was based on his appeal waiver, which was approved during his plea colloquy and formalized in writing. New York courts regularly rely on appeal waivers to preclude appellate review of claims challenging the procedures used to determine a sentence and claims that a negotiated sentence is harsh or excessive, as long as the claims do not "implicate the legality of the sentence or the court's power to impose it." *People v. Rahim*, 78 A.D.3d 1240, 1241 (3d Dep't. 2010) (citing *People v. Callahan*, 80 N.Y.2d 273, 280-81 (1992)); *see People v. Ramos*, 7 N.Y.3d 737, 738 (2006); *People v. Lopez*, 6 N.Y.3d 248, 255-56 (2006); *People v. Seaberg*, 74 N.Y.2d 1, 7-9 (1989); *People v. Taubenkraut*, 48 A.D.3d 598 (2d Dep't. 2008). The Appellate Division's reliance upon petitioner's appeal waiver also furthered the state's legitimate interests in ensuring "fairness and finality in criminal matters," and "the desirable objective of prompt, effective resolution of criminal litigation." *Lopez*, 6 N.Y.3d at 255-56.

Accordingly, the Appellate Division's express invocation of petitioner's appeal waiver to dispose of his sentencing misinformation claim bars federal habeas review. *See Lopez*, 6 N.Y.3d at 255 (holding that an appeal waiver encompasses "any issue that does not involve a right of constitutional dimension going to "the very heart of the process," and ruling that a

---

[4] In determining whether the application of an independent state rule was "exorbitant," the court should consider: (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether petitioner had "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Garvey*, 485 F.3d at 714 (quoting *Cotto,* 331 F.3d at 240). The *Cotto* factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case. *Id.* at 714.

11

valid appeal waiver precludes review of claims that a sentence is harsh or excessive) (quoting *People v. Hansen*, 95 N.Y.2d 227, 230 (2000)); *see also Gilliam v. Superintendent*, No. 9:13-CV-0788 (DNH/ATB), 2015 WL 114344 at *9 (N.D.N.Y. Jan. 8, 2015) (Appellate Division's denial of petitioner's appeal based upon an appeal waiver "bars consideration of all of petitioner's habeas claims arising from the alleged fraud involving his Miranda waiver form."); *Moore v. Martuschello*, No. 1:10-CV-3546, 2013 WL 4516094 at *5 (E.D.N.Y. Aug. 23, 2013) ("'Courts in this circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and independent state ground for denying habeas corpus relief.'") (citing *Alvarez v. Yelich*, No. 2:09-CV-1343, 2012 WL 2952412 at *5 (E.D.N.Y. July 17, 2012) (collecting cases))*; Burvick v. Brown*, No. 2:10-CV-5597, 2013 WL 3441176 at *6 (E.D.N.Y. Jul. 9, 2013) ("Federal courts have held that New York law allowing defendants to waive their right to appeal as part of a plea agreement, as long as the waiver is made voluntarily and is knowing and intelligent, is an adequate and independent state ground that bars habeas review, and this Court agrees with those decisions."); *Haynes v. New York*, No. 2:10-CV-5867, 2012 WL 6675121 at *8 (E.D.N.Y. Dec. 21, 2012) (claims that New York's persistent violent felony offender statute was unconstitutional and that the petitioner was improperly adjudicated as a persistent violent felony offender because the People violated a section of the criminal procedure law were barred by an appeal waiver).

Petitioner is therefore not entitled to habeas review unless he demonstrates cause for and prejudice from the default, or that the denial of habeas relief would result in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313

F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, __U.S.__, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (same).

Petitioner has not demonstrated that any external cause or prejudice exists to warrant setting aside his appeal waiver. *Carrier,* 477 U.S. at 496; *Morales v. Woughter*, No. 1:09-CV-0909, 2010 WL 2399992 at *4 (E.D.N.Y. Jun. 10, 2010). Although he claims in Ground Two of his petition that his waiver should not bar his sentencing misinformation claim because the court imposed an "enhanced" sentence, that argument is without merit. Pet. at 5-6. As the Appellate Division noted, the trial court expressly declined to impose an enhanced sentence. *Smith*, 119 A.D.3d at 1089. Instead, "consistent with the terms of the plea agreement," the court sentenced petitioner to a legal sentence within the range agreed upon at the time of petitioner's plea. *Id.* The record is clear that petitioner "waived his right to appeal in exchange for a promised determinate prison sentence of between 15 and 20 years," and that the sentence imposed would depend in part upon remaining "trouble free" between the plea and sentencing. *Id.*; see Dkt. No. 7-2 at SR 179-95, 200.

Finally, petitioner does not allege, nor does the petition suggest, that he is actually

13

innocent. *See Poindexter v. Nash*, 333 F.3d 372, 380-81 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally"); *Williams v. Brown*, No. 1:08-CV-10044, 2010 WL 850182 at *3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities . . . none of which casts any doubt on [his] underlying guilt.").

Based on the foregoing, Grounds One and Two are dismissed.

### B.     Grounds Three, Four and Five

Petitioner argues in Ground Three of his petition that he was denied the terms of his plea agreement because the trial court "relied upon the fact" that he was indicted on new charges to "enhance" his sentence even though the court "made no specific reference to [him] getting reindicted [sic] as a post plea condition[.]" Pet. at 6. In Grounds Four and Five, petitioner argues that the prosecutor coerced his plea by promising not to prosecute his girlfriend in exchange for the plea, and that counsel was ineffective because he communicated the prosecutor's promise to petitioner. Pet. at 7. For the reasons that follow, the Court finds that these grounds are unexhausted and procedurally defaulted.

An application for a writ of habeas corpus may not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d

14

Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust his claims, petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton Fillion*, No. 9:03-CV-1377 (DNH/GJD), 2007 WL 3008167 at \*5 (N.D.N.Y. Oct. 10, 2007).

Here, petitioner raised Grounds Three, Four and Five on direct appeal as part of his pro se supplemental brief. Dkt. No. 7-2 at 237-52. The Appellate Division rejected them, finding that the claims were unpreserved for appellate review and that, "[i]n any event, a review of the plea proceedings satisfies us that defendant's guilty plea was knowingly, voluntarily and intelligently made." *Smith*, 119 A.D.3d 1089-90.

Petitioner sought leave to appeal to the New York Court of Appeals, but he did not raise Grounds Three, Four and Five in his leave application. Dkt. No. 7-2 at SR 332-33. Instead, appellate counsel wrote that the "primary issue to be raised on appeal to the Court of Appeals is whether the trial court improperly based the Appellant's sentence on unreliable and inaccurate accounts of the Appellant's post-plea conduct." *Id.* at SR 332. Because appellate counsel argued only one of petitioner's claims at length in the leave application, and did not ask the Court of Appeals to review all claims raised in the Appellate Division,

15

Grounds Three, Four and Five were not fairly presented to the New York Court of Appeals. Those grounds are, therefore, unexhausted. *See Galdamez v. Keane*, 394 F.3d 68, 74-76 (2d Cir. 2005) (claims properly exhausted even though petitioner "did not specify particular claims in his application for leave to appeal, but simply enclosed a copy of the Appellate Division's decision affirming the conviction, and stated that '[t]he appellate hereby requests leave to appeal to this Court'" because "the briefs fairly presented the federal claims, and Galdamez's leave application reasonably could be construed only as a request for further appellate review of all issues in the attached briefs[.]") (internal quotations and citation omitted); *Ramirez v. Atty. Gen., Stat of N.Y.*, 280 F.3d 87, 96, 97 (2d Cir. 2001) (explaining that "the factual basis for an ineffective assistance claim must, like other issues, be presented to all relevant state courts" and "[r]eferences to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal."); *Jordan v. LeFevre*, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised).

There is no remaining avenue by which petitioner could properly exhaust Grounds Three, Four and Five. He cannot file a direct appeal or leave application in order to exhaust them because a defendant is "entitled to one (and only one) appeal to the Appellate Division," and one application for leave to appeal to the Court of Appeals. *Aparicio v. Artuz*,

16

269 F.3d 78, 91 (2d Cir. 2001); *Grey*, 933 F.2d at 120. If petitioner filed a CPL §440.10 motion in an attempt to exhaust these claims, the state court would have to deny the motion because the Appellate Division rejected all of the claims on direct appeal on procedural grounds or on the merits. *Smith*, 119 A.D.3d at 1088-90; *see* CPL §440.10(2)(a) (a state court "must deny" a motion to vacate a judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."). Since no remaining avenue exists in which petitioner could properly present Grounds Three, Four and Five to the state's highest court, the claims are deemed exhausted but procedurally defaulted unless petitioner shows cause for the default and resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327; *Coleman*, 501 U.S. at 732.

Petitioner does not assert any basis for finding cause to excuse the default of Grounds Three, Four and Five, and the Court discerns none. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state court). Therefore, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review. Murray, 477 U.S. at 496. Finally, petitioner does not allege, nor does the petition suggest, that he is actually innocent. *See Schlup*, 513 U.S. at 329 ("[A]ctual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant

17

guilty.").

Accordingly, Grounds Three, Four and Five are procedurally defaulted and are dismissed.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires.[5] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

Dated: January 6, 2016

Albany, NY

---

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).